Alvis N. DOWD, and Hershel Hanner, d/b/a North Caddo Broadcasting Company, Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee.

No. 24781.

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1972.
Decided April 10, 1972.

reasonably assure the safety of any other person or the community. 23 D.C.Code 1321(a).

Mr. Lauren A. Colby, Washington, D. C., for appellant.

Mr. Charles A. Zielinski, Counsel, F. C.C., for appellee. Messrs. Richard E. Wiley, Gen. Counsel at the time the brief was filed, John H. Conlin, Associate Gen. Counsel at the time the brief was filed, and Miss Katrina Renouf, Counsel, F.C.C. at the time the brief was filed, were on the brief, for appellee. Mr. Charles M. Firestone, Atty., F.C.C., also entered an appearance for appellee.

Before McGOWAN and ROBINSON, Circuit Judges, and MATTHEWS,* Senior District Judge for the United States District Court for the District of Columbia.

PER CURIAM:

Appellant is the licensee of standard broadcast radio station KNCB in Vivian, Louisiana, operating on a frequency of 1600 kilocycles (kc). Seeking a change to 1320 kc, it challenges the Federal Communications Commission's denial of its petition for a waiver of the "freeze" which the Commission has imposed, pending new rule-making proceedings, on the acceptance of applications for new standard broadcast stations or for major changes in the frequency allocations of existing ones. We affirm the Commission's action.

---

* Sitting by designation pursuant to 28 U.S. Code Section 294(c).

1. The Commission stated:
 In support of its request for waiver, North Caddo claims that due to the use of 1600 kilocycles, it has not only experienced serious coverage problems, but that its service is reduced by

In September, 1968, appellant filed an application to change its frequency from 1600 kc to 1300 kc. The Commission accepted this application despite the freeze, since it conflicted with another application filed prior to the freeze and was therefore within an exception to it. However, in an attempt to avoid the comparative hearing necessitated by the competing applications for 1300 kc, appellant sought to change its request from 1300 kc to 1320 kc, and petitioned the Commission for leave to amend its application. Since there was no prior conflicting application for 1320 kc, the amended petition could not be accepted under an exception to the freeze, and appellant therefore requested a waiver.

In support of the waiver request, appellant alleged that (1) it was unable to achieve adequate coverage at 1600 kc, due to poor ground conductivity and the inability of many radios to tune to that frequency, (2) its inadequate coverage had resulted in financial "hard going," (3) the proposal for 1320 kc would eliminate the need for a comparative hearing on its request for 1300 kc, and would therefore save time and expense for both the Commission and appellant, and (4) the amendment would not violate the basic purpose of the freeze, since it did not contemplate "any additional load whatever, electrical or economic, on the AM broadcasting spectrum."

By a memorandum opinion and order released on September 14, 1970, the Commission denied appellant's request for a waiver and rejected the proposed amendment. Noting appellant's arguments,[1] it disposed of them as follows:

Policy considerations underlying the current "freeze" criteria . . .

the inability of many radios to tune to its location on the extreme upper end of the broadcast band. Also, it is alleged that the licensee has had "hard going" in achieving a financially successful station, and that acceptance of amendment will eliminate a . . . hearing proceeding . . . on 1300 kilocycles.

are so important that the Commission has granted waivers only under extraordinary circumstances, which we do not find in this case. *While 1600 kilocycles may not be the most desirable frequency on the standard broadcast band from a signal propagation standpoint,* we note that KNCB's coverage of Vivian is quite adequate according to the Commission's rules, *and any undesirable aspects of the channel due to its location on the upper end of the band are certainly not considered so significant as to justify the extraordinary relief requested.* Moreover, we find no merit in the argument that acceptance of the amendment is justified on the basis that it would preclude a . . . hearing. . . . [M]ost likely, publication of the amended application on a new "cutoff" list, as required by section 1.-571(c), could well result in the receipt of conflicting applications which would require still another hearing proceeding. (emphasis added) [2]

■ Appellant attacks the Commission's decision on two grounds. First, it alleges that "the failure of the Commission's Memorandum Opinion and Order to even allude to appellant's arguments in its Petition for Waiver suggests either that the Commissioners were unaware of appellant's contentions, or failed to understand them." In light of the paragraph of the opinion excerpted in footnote 1, however, we think that this claim of error is frivolous.

Second, appellant argues that since the Commission did not make findings with respect to the factual issues raised by the petition, it must be presumed to

have acted "arbitrarily and capriciously." This argument, however, misconstrues the rationale of the Commission's decision. The Commission has determined that waiver of the freeze, the validity of which appellant does not challenge, is justified "only under extraordinary circumstances." A fair reading of its opinion, in light of the emphasized portion of the passage excerpted above, is that the Commissioners assumed appellant's alleged hardships to exist, but nevertheless found them insufficient to overcome the policy objectives behind the freeze. Thus, they recognized that there were "undesirable aspects" to broadcasting at 1600 kc in appellant's area, but held that they were not "so significant as to justify the extraordinary relief requested."

■ In short, the Commission ruled that the policy objectives behind the freeze outweigh the hardships caused stations such as appellant's. We see no reason to overturn this policy decision, especially since appellant is not left without an avenue for relief. The rejection of the proposed amendment leaves intact appellant's original proposal for a transfer to 1300 kc; [3] and the comparative hearing necessitated by competing applications for that frequency will afford appellant an opportunity to air its claims of inadequate coverage and financial hardship. In fact, given the Commission's opinion that acceptance of the amendment would likely result in a hearing on competing applications for 1320 kc, we fail to see how its rejection makes it less likely that appellant will obtain timely relief.

Affirmed.

2. Although this paragraph does not specifically refer to the fourth of the arguments noted above (the asserted inapplicability of the policies behind the freeze), a rejection of that argument is implicit in the Commission's point that, if the amendment were accepted for filing, the receipt of conflicting applications would likely result. If one of the competing applica-

tions were to prevail, then there *would* be an "additional load . . . on the AM broadcasting spectrum." A new station would broadcast at 1320 kc, while appellant would continue to broadcast at 1600 kc.

3. Appellant does not claim that 1300 kc is less desirable, in terms of coverage, than 1320 kc.